UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Omar Kwabena Walford, | Case No. 20-cv-1637 (SRN/TNL) |
| Petitioner, | |
| v. | **ORDER** |
| Warden Guy Bosch, | |
| Respondent. | |

This matter is before the Court on pro se Petitioner Omar Kwabena Walford's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, ECF No. 1, and Petitioner's Motion to Stay Writ of Habeas Corpus, ECF No. 6. For the reasons stated below, Petitioner's motion to stay is denied without prejudice, and Respondent Warden Guy Bosch is directed to submit certain additional materials to the Court pursuant to Rules 5 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts.

## I. BACKGROUND

In 2015, Petitioner was charged with four counts of assault. *State v. Walford*, No. A18-1904, 2019 WL 4745370, at *1 (Minn. Ct. App. Sept. 30, 2019) [hereinafter *Walford III*], *rev. denied* (Minn. Dec. 17, 2019); *see generally State v. Walford*, No. 62-CR-15-4027 (Minn. Dist. Ct.) [hereinafter *Walford*].

### A. Trial: *Walford*

Petitioner's trial was scheduled for December 2015. *Walford III*, 2019 WL

1

4745370, at *1; Resp't's App. at 9-10,[1] ECF No. 10-1; Pet'r's Br. at 2, ECF No. 7.  The trial was continued, however, "several times, for reasons including scheduling conflicts, to provide [Petitioner's] public defender an opportunity to gather more evidence, and because [Petitioner's] public defender was on medical leave for a period of time."  *Walford III*, 2019 WL 4745370, at *1; *see* Resp't's App. at 10; Pet'r's Br. at 2.  On January 17, 2017, Petitioner

> requested to discharge the office of the public defender and proceed pro se. [Petitioner] told the [trial] court that there was a breakdown in his relationship with his public defender that could not be repaired.  [Petitioner] acknowledged that another attorney would not be appointed for him.  The [trial] court accepted [Petitioner's] petition to proceed pro se and discharged the office of the public defender.

*Walford III*, 2019 WL 4745370, at *1; *see* Resp't's App. at 10, 14-15; Pet'r's Br. at 3, 8-9.[2]  On February 10, 2017, the trial court subsequently appointed advisory counsel for Petitioner, stating that advisory counsel "was not required to be prepared to assume full representation of [Petitioner]."  Resp't's App. at 15; *accord* Pet'r's Br. at 10.[3]

Petitioner proceeded to a bench trial and was found guilty on three of the four counts.  *Walford III*, 2019 WL 4745370, at *1; Resp't's App. at 11; Pet'r's Br. at 3.  Petitioner was sentenced to prison and appealed to the Minnesota Court of Appeals.  *Walford III*, 2019 WL 4745370, at *1; Resp't's App. at 11; Pet'r's Br. at 3, 10.

---

[1] The Court cites to the Bates-stamped pages of Respondent's Appendix, which are consecutively paginated.
[2] Respondent will be directed to provide the transcript from this hearing, the petition to proceed pro se, and any written order thereon.  *See infra* Section III.
[3] Respondent will be directed to provide a copy of this order.  *See infra* Section III.

### B. First Appeal: *Walford II*

"In an order opinion, [the Minnesota Court of Appeals] concluded that the [trial] court abused its discretion by failing to determine if [Petitioner's] allegations concerning an irreparable breakdown in his relationship with his public defender were true and serious enough to justify the appointment of substitute counsel." *Walford III*, 2019 WL 4745370, at *1 (citing *State v. Walford*, No. A17-1396, slip op. at *5 (Minn. Ct. App. July 31, 2018) [hereinafter *Walford II*]).[4] The Minnesota Court of Appeals "remanded the case to the [trial] court with 'directions to conduct an inquiry into [Petitioner's] statement that there was an irreparable breakdown in the attorney-client relationship.'" *Walford III*, 2019 WL 4745370, at *1 (quoting *Walford II*, slip op. at *7); *see* Resp't's App. at 3; Pet'r's Br. at 4. The Minnesota Court of Appeals

> explained that, if the [trial] court finds that there was not an irreparable breakdown in the attorney-client relationship that affected the public defender's ability or competence to represent [Petitioner], then [Petitioner's] waiver of counsel was voluntary and his conviction stands. [*Walford II*, slip op.] at *7-8. But if the [trial] court finds that there was an irreparable breakdown in the attorney-client relationship that affected the public defender's ability or competence to represent [Petitioner], the district court should determine whether [Petitioner] is entitled to a new trial. *Id.* at *8.

*Walford III*, 2019 WL 4745370, at *1.

### C. Evidentiary Hearing

On remand, the trial court held an evidentiary hearing on October 22, 2018. *Walford*

---

[4] Respondent will be directed to provide a copy of this Order Opinion; Petitioner/Appellant's briefs, including any appendices and pro se briefs, filed in this appeal; and any petition for review of the Order Opinion. *See infra* Section III.

*III*, 2019 WL 4745370, at *1; *see* Resp't's App. at 11; Pet'r's Br. at 4.[5]  At the hearing, Petitioner "testified concerning the claimed breakdown in the attorney-client relationship." *Walford III*, 2019 WL 4745370, at *1; *see, e.g.*, Resp't's App. at 16-19; Resp't's Br. at 11-15.  Among other things, Petitioner testified "that 'the beginning of the end of the trust level' happened at a February 2016 hearing where his public defender told [him] that he could face 129 months if he was convicted after trial, or 60 months consecutive for each victim."  *Walford III*, 2019 WL 4745370, at *2.  Additionally, Petitioner

> testified that his public defender visited him with an investigator while he was in custody for [an] arson charge [pending in another case] and "at that time things blew out of control with her and I." [Petitioner] testified that he "was upset at the time" and "felt like it was the end of the world for me." [Petitioner] testified that he believed nothing was being done on his other two cases by his public defender, and when she "came to see me at the jail in December of 2016, I wasn't happy." [Petitioner] was concerned why it was the second or third time she came to see him with an investigator, and why the public defender had not done additional investigation. According to [Petitioner], his public defender could not explain why she did not give a witness list to the court, and when he asked why she had not investigated his case, she could not answer the question. At that point, [Petitioner] recalled that he put his hand up and said "I'm not talking to you." [Petitioner] admits he was upset, and that his anger may have frightened his public defender. [Petitioner] told the [trial] court that his public defender "packed up all her stuff and said you're not going to treat me that way."
>
> [Petitioner] testified that, in light of another order for protection involving his wife, [he] was scared that his public defender was going to get him charged with terroristic threats. [Petitioner] did not talk to his public defender after that meeting.  He asked the managing attorney of the public defender at the January 17, 2017 scheduled trial date to tell his

---

[5] Respondent will be directed to provide the transcript of this hearing.  *See infra* Section III.

4

> public defender that he apologizes for his behavior and that he meant no harm. But he also told the managing attorney that he does not want to get into a situation with his lawyer again. [Petitioner] testified that he told the managing attorney that there was an irreparable breakdown in the relationship and that he did not want to deal with a person to whom he cannot express himself and of whom he was afraid. [Petitioner] asked for a new attorney. The managing attorney told him that this issue would be between him and the judge.

*Id.*

In what appears to have been an oral ruling on the record after the evidentiary hearing,[6] the trial court "found that there was not an irreparable breakdown of the attorney-client relationship." *Id.* at *3. Rather, the trial court found that "there was personal tension and deep dissatisfaction with [Petitioner's] public defender," noting that it was "hard . . . to imagine what [Petitioner's] public defender could have done in terms of her professional obligations to [Petitioner] to remedy them to [Petitioner's] satisfaction." *Id.* (quotation omitted).

"In analyzing whether the public defender's ability and competence was affected by her relationship with [Petitioner], the [trial] court identified two major issues that [Petitioner] raised: 'One, she lied to him. Two, he was fearful of her.'" *Id.*

> Concerning the first issue, the [trial] court found that [Petitioner's] testimony that his public defender lied about the sentence he faced was insufficiently supported because there was no transcript or record of his public defender telling him that his maximum sentence was somewhere around 110 months. The [trial] court found that, while [Petitioner] may have disbelieved or disagreed with the possible sentence, his public defender did not lie about the sentence. The [trial] court

---

[6] Citations to the trial court's ruling have been citations to the hearing transcript. *See, e.g.*, Resp't's App. at 19-22. To the extent one exists, Respondent will be directed to file a copy of any written order memorializing the trial court's findings and conclusions of law from this hearing. *See infra* Section III.

5

>  explained that there was also no indication in the record concerning whether the attorney's estimate of [Petitioner's] possible exposure was limited to just this case. The [trial] court concluded that any misunderstanding between [Petitioner] and his public defender did not rise to the level that the public defender was either not competent or not able to represent [Petitioner].
>
>  As to the second issue, the [trial] court understood [Petitioner's] fear as arising from two circumstances: first, that [Petitioner] was concerned that his public defender could somehow use an order for protection in a different case against him, and second, that [Petitioner] was dissatisfied with his public defender's use of an investigator when meeting with him. The [trial] court stated, "If the concern is an order for protection, the Court finds that a little far-fetched. If the concern is that [his public defender] would make up an accusation against [Petitioner], then the use of a third[-]party witness seems to be kind of the best practice." It concluded that [Petitioner's] concern was not "terribly credible" but, "more importantly, it doesn't rise to the level that [Petitioner and his public defender] had an irreparable breakdown in their communication."

*Id.* (footnote omitted).

Ultimately, the trial court "found that [Petitioner] gave a voluntary, knowing, and intelligent waiver of his right to counsel and voluntarily chose to represent himself." *Id.*

### D. Second Appeal: *Walford* III

Petitioner appealed again to the Minnesota Court of Appeals, asserting the trial court "erred in determining that he was not entitled to the appointment of substitute counsel." *Walford III*, 2019 WL 4745370, at *4. Petitioner challenged the trial court's findings with respect to the absence of exceptional circumstances, arguing, among other things, "that his unrebutted testimony at the evidentiary hearing established that there was a breakdown in the attorney-client relationship that affected his public defender's ability to represent him."

6

*Id.* Concluding the trial court's findings were supported by the record, the Minnesota Court of Appeals affirmed. *Id.* at *4-5. Petitioner subsequently petitioned for review by the Minnesota Supreme Court, which was denied. Resp't's App. at 35-45.

### E. Habeas Petition

Petitioner filed a habeas petition pursuant to 28 U.S.C. § 2254, asserting three grounds for relief based on his Sixth Amendment right to counsel. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *see also* U.S. Const. amend XIV. Petitioner asserts that (1) the trial court denied him the right to counsel by "forc[ing]" him to represent himself "with . . . advisory counsel, who was not prepared," Pet. at 6; (2) his "waiver of counsel was not voluntary," Pet. at 8; and (3) his "unrebutted testimony at the evidentiary hearing established there was a complete breakdown in communication between [himself] and [the public defender]," Pet. at 9. The Petition has been referred to the undersigned for a report and recommendation to the district court pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## II. MOTION TO STAY

Petitioner has moved to stay this habeas proceeding so that he "can exhaust a constitutional issue with the Minnesota state courts." Mot. to Stay at 1.

### A. Exhaustion Requirement

Petitioner's motion necessitates some discussion of § 2254's exhaustion requirement. A state prisoner may seek a writ of habeas corpus in federal court "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

7

States." 28 U.S.C. § 2254(a). In order for habeas relief to be granted, a state prisoner first must show that he "has exhausted the remedies available" in the state courts. 28 U.S.C. § 2254(b)(1)(A); *see, e.g.*, *Armstrong v. Iowa*, 418 F.3d 924, 925 (8th Cir. 2005). To satisfy this exhaustion requirement, the state prisoner "must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)" in a manner that alerts the court to the claim's federal nature and gives "the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and quotations omitted); *accord O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

"[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). A claim is unexhausted if state law allows the petitioner to raise the claim by any available state court procedure. *See* 28 U.S.C. § 2254(c). "When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in *Rhines*." *Armstrong*, 418 F.3d at 926 (citation omitted). In *Rhines*, the Supreme Court emphasized that this "stay and abeyance" procedure "should be available only in limited circumstances." 544 U.S. at 277; *see, e.g.*, *Porter v. Janssen*, No. 19-cv-3198 (NEB/TNL), 2020 WL 2066921, at \*2 (D. Minn. Apr. 13, 2020), *report and recommendation accepted*, 2020 WL 2065644

8

(D. Minn. Apr. 29, 2020).

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Rhines*, 544 U.S. at 277.

"The 'stay and abeyance' procedure, however, does not apply when the claims are procedurally defaulted." *Krieger v. Minnesota*, No. 13-cv-1942 (JRT/HB), 2014 WL 7771778, at *1 (D. Minn. Sept. 5, 2014) (citing *Boss v. Ludwick*, 863 F. Supp. 2d 845, 856 (N.D. Iowa 2012)), *report and recommendation adopted*, 2015 WL 470811 (D. Minn. Feb. 4, 2015). If a petitioner has not fairly presented his claim in state court *and* a state procedural rule precludes further litigation of the claim, that claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) ("If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now."). A stay for purposes of "exhausting" a procedurally defaulted claim accomplishes nothing; such a claim would be no less procedurally defaulted upon conclusion of the state court proceedings. *Abdillahi v. Miles*, No. 16-cv-0963 (JNE/HB), 2017 WL 4047859, at *8 (D. Minn. June 29, 2017), *report and recommendation accepted*, 2017 WL 4022407 (D. Minn. Sept. 12, 2017). "Staying habeas proceedings is [therefore] futile when a claim is procedurally defaulted." *Evans v. King*, No. 10-cv-4045 (SRN/SER),

2011 WL 3837090, at *4 (D. Minn. July 29, 2011), *report and recommendation adopted*, 2011 WL 3837086 (D. Minn. Aug. 29, 2011); *accord Amen El v. Roy*, No. 18-cv-2545 (JRT/HB), 2019 WL 2029500, at *3 (D. Minn. Jan. 16, 2019), *report and recommendation adopted*, 2019 WL 1110802 (D. Minn. Mar. 11, 2019).

In Minnesota, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Thus, Minnesota law provides a procedural rule that denies further litigation of a claim that could have been raised on direct appeal. *Murphy v. King*, 652 F.3d 845, 849-50 (8th Cir. 2011). This rule "bars not only claims that were known at the time of direct appeal, but also claims that *should have* been known." *Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013) (citing *Knaffla*, 243 N.W.2d at 741).

**B. Analysis**

With these principles in mind, the Court returns to Petitioner's motion to stay. As stated above, Petitioner has requested that this matter be stayed so that he "can exhaust a constitutional issue with the Minnesota state courts." Mot. to Stay at 1. But, Petitioner has not identified what that "constitutional issue" is, i.e., the nature of the claim he seeks to exhaust, in either the motion or the memorandum accompanying motion. *See generally* Mot. to Stay; Pet'r's Br.

Petitioner's memorandum identifies three "legal issue[s]." Pet'r's Br. at 5-6. They are: (1) "[d]id the [trial] court commit reversible error by denying [Petitioner's] request for substitute counsel and accepting his waiver of counsel where [Petitioner's] request was

timely and supported by exceptional circumstances," Pet'r's Br. at 5; (2) "[d]id [Petitioner's] unrebutted testimony at the evidentiary hearing establish there was a complete breakdown in communication between [Petitioner] and [his public defender], or, at least, a breakdown in the attorney-client relationship that affected [the public defender's] ability to represent [Petitioner], thus requiring appointment of substitute counsel," Pet'r's Br. at 5; and (3) "[i]s a new trial required because [Petitioner's] waiver of counsel was not voluntary, and because [Petitioner] was denied counsel at a critical stage of the prosecution," Pet'r's Br. at 6.

These "legal issues" largely overlap with Petitioner's grounds for habeas relief and, as best as this Court is able to tell, appear to be arguments in support of the Petition itself. It is not apparent to this Court which, if any, of these "legal issues" Petitioner deems separate and distinct from the grounds for relief identified in the Petition or what "constitutional issue"/claim Petitioner seeks to pursue in state court. Without some indication as to the claim Petitioner seeks to exhaust in state court, there is simply no basis upon which this Court could conclude that *Rhines'* "limited circumstances" are present here. "[A] *Rhines* analysis requires a court to consider whether there is good cause for a petitioner's failure to exhaust a particular claim in state court. Furthermore, a *Rhines* analysis also requires a court to determine whether a given claim is 'plainly meritless.'" *Porter*, 2020 WL 2066921, at 3; *see Rhines*, 544 U.S. at 277. Without knowing what the claim is, the Court can do neither of these things. Nor has Petitioner offered *any* explanation as to why he did not first pursue this "constitutional issue"/claim in state court. These reasons alone warrant denial of the motion.

Moreover, viewed collectively, the common theme in Petitioner's grounds for relief and "legal issues" is the trial court's handling of the situation with Petitioner's public defender. Claims related to the discharge of Petitioner's public defender and the appointment of advisory counsel would have been known to Petitioner at the time of his first appeal or should have been known to him at that time. Claims related to the evidentiary hearing and the trial court's findings of fact and conclusions of law on remand would have been known to Petitioner at the time of his second appeal or should have been known to him at that time. Thus, to the extent Petitioner did not previously raise a claim related to the trial court's handling of the situation with Petitioner's public defender, he cannot now raise such a claim in a petition for postconviction relief under *Knaffla*. Petitioner has not articulated—or even attempted to explain—how this "constitutional issue"/claim falls within any exception to *Knaffla*. *See Sontoya*, 829 N.W.2d at 604; *see also Murphy*, 652 F.3d at 850.

Because any previously unraised claim related to the trial court's handling of the situation with Petitioner's public defender is now barred, such a claim is procedurally defaulted. As stated above, a stay is not available for a procedurally defaulted claim. *Krieger*, 2014 WL 7771778, at *1; *see also, e.g.*, *Amen El*, 2019 WL 2029500, at *3; *Abdillahi*, 2017 WL 4047859, at *8; *Evans*, 2011 WL 3837090, at *4-5. Further, Petitioner has not claimed that this "constitutional issue"/claim falls within one of the two narrow exceptions for procedurally defaulted claims. *See Coleman*, 501 U.S. at 750; *Murphy*, 652 F.3d at 850; *McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997).

Based on the foregoing, Petitioner's motion to stay is denied without prejudice. The

12

Court's denial of the motion to stay is in no way an evaluation of whether the grounds for relief raised in the Petition are properly before the Court, the merits of Petitioner's claims, or any arguments in support thereof. Such an evaluation requires additional materials from the underlying state court proceedings before a recommendation on the Petition itself can be made to the district court.

### III. ADDITIONAL MATERIALS

Under Rules 5 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court may direct Respondent to submit transcripts and additional materials related to a petition for a writ of habeas corpus. Based on this Court's review of the Petition and the parties' filings to date and pursuant to these Rules, Respondent shall provide the following from the underlying state court proceedings:

**A.** *Walford*

1. Transcript from the January 17, 2017 hearing, in which the trial court accepted Petitioner's petition to proceed pro se; the petition to proceed pro se; and any written order thereon.

2. February 10, 2017 Order, appointing advisory counsel.

**B.** *Walford II*

1. Petitioner/Appellant's briefs, including any appendices and pro se briefs, filed in *State v. Walford*, No. A17-1396, at the Minnesota Court of Appeals.

2. The Minnesota Court of Appeals' Order Opinion, dated July 31, 2018, in *State v. Walford*, No. A17-1396.

3. Any petition for review of the Minnesota Court of Appeals' Order Opinion, dated July 31, 2018, in *State v. Walford*, No. A17-1396.

C. *Walford III*

1. Transcript from the October 22, 2018 evidentiary hearing held by the trial court on remand and any written order memorializing the trial court's findings and conclusions of law from that hearing.

2. The appendix to Petitioner/Appellant's principal brief and any other briefs (including pro se briefs) and their appendices filed by Petitioner/Appellant in *State v. Walford*, No. A18-1904, at the Minnesota Court of Appeals.

**Within 30 days from the date of this Order**, Respondent shall: (1) electronically file a copy of these materials; (2) submit two courtesy copies of these materials to the Court; and (3) serve a copy of these materials on Petitioner. To the extent any of these materials do not exist, Respondent shall file an affidavit affirmatively stating so.

**IT IS SO ORDERED.**

Date: January  25 , 2021                                         *s/ Tony N. Leung*
                                                                 Tony N. Leung
                                                                 United States Magistrate Judge
                                                                 District of Minnesota

                                                                 *Walford v. Bosch*
                                                                 Case No. 20-cv-1637 (SRN/TNL)